# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

| | |
|---|---|
| BAYRON A. GONZALEZ,<br><br>                        Petitioner,<br><br>v.<br><br>CHAD KOLITWENZEW, Chief of Corrections, Kankakee County Sheriff's Office, in his official capacity;<br><br>ROBERT SCHULTZ, Assistant Chief of Corrections, Kankakee County Sheriff's Office, in his official capacity,<br><br>                        Respondents. | Case No. __17-1580__ |

## PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner Bayron A. Gonzalez was placed in removal proceedings nearly three years ago and conceded he was removable to Guatemala. On December 13, 2017, the Chicago Immigration Court granted Mr. Gonzalez's application for withholding of removal under the Immigration and Nationality Act, allowing him to remain lawfully in the United States. (*See* Immigration Court Order, Ex. A.) As set forth in the Immigration Court Order, the Department of Homeland Security (DHS) waived its right to appeal from this Order. Despite the Immigration Court's December 13, 2017 Order, however, DHS has refused to release Mr. Gonzalez from custody. Mr. Gonzalez respectfully petitions this Court for a writ of habeas corpus.

## JURISDICTION

This Court has jurisdiction over Mr. Gonzalez's petition under 28 U.S.C. § 2241 (habeas corpus authority), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. §§ 2201, 2202 (Declaratory Judgment Act).

## VENUE

Venue is proper in the U.S. District Court for the Central District of Illinois under 28 U.S.C. § 1391(e).  Venue is proper under § 1391(e) because Mr. Gonzalez resides in this judicial district through his detention in Kankakee, Illinois.  Venue is also proper under § 1391(e) because respondents Chad Kolitwenzew and Robert Schultz reside, upon information and belief, in this judicial district.

## THE PARTIES

### A.    Petitioner

Mr. Gonzalez was granted withholding of removal under the Immigration and Nationality Act but remains within the custody of DHS.  He is currently detained in the Jerome Combs Detention Center in Kankakee, Illinois.

### B.    Kankakee County Respondents

Chad Kolitwenzew is the Chief of Corrections of the Kankakee County Sheriff's Office.  He is an official custodian of Mr. Gonzalez.  Robert Schultz is the Assistant Chief of Corrections of the Kankakee County Sheriff's Office.  He is an official custodian of Mr. Gonzalez.

## BACKGROUND

### A.    Mr. Gonzalez's Application for Withholding of Removal

Bayron Gonzalez is a 50-year-old gay man living with HIV.  Following a difficult childhood in Guatemala, he entered the United States legally in 1981 and became a lawful permanent resident ten years later.  In May 2015, based on several convictions for credit card-related offenses, DHS took Mr. Gonzalez into custody and initiated removal proceedings against him.  Mr. Gonzalez conceded his removability but sought relief under the Immigration and Nationality Act.  He filed an application for withholding of removal based on the likelihood that his life or freedom would be threatened in Guatemala because he is gay and HIV-positive.

In November 2015, the Immigration Court denied Mr. Gonzalez's application for withholding of removal, and the Board of Immigration Appeals ("Board") affirmed this decision several months later. In April 2017, however, the U.S. Court of Appeals for the Seventh Circuit remanded Mr. Gonzalez's case to the Board for reconsideration, and the Board thereafter remanded the case to the Immigration Court.

### B.   The Immigration Court's Grant of Withholding of Removal

On remand, the Immigration Court granted Mr. Gonzalez's application for withholding of removal. The court acknowledged that the evidence demonstrated an "overwhelming" likelihood that Mr. Gonzalez would be persecuted on account of his sexual orientation and HIV status in Guatemala. The court signed its order withholding Mr. Gonzalez's order of removal on the day of Mr. Gonzalez's merits hearing, December 13, 2017. The order became administratively final the same day, upon the Government's waiver of the right to appeal. 8 C.F.R. § 1003.39.

### C.   The Government's Refusal to Release Mr. Gonzalez from Custody

Later on December 13, counsel for Mr. Gonzalez, Thomas Frederick, provided the Immigration Court's final order to Mr. Gonzalez's deportation officer, DHS Officer Alberto Aguilar, and his supervisor, DHS Officer Oscar Linares, requesting Mr. Gonzalez's immediate release. Instead of processing Mr. Gonzalez's release, Officer Aguilar informed Mr. Frederick that ICE would review Mr. Gonzalez's file to make an administrative decision on whether to seek to remove Mr. Gonzalez to a country other than Guatemala. Five days later, on December 18, Officer Linares confirmed to Mr. Frederick that ICE would continue to detain Mr. Gonzalez for up to 90 days while seeking to remove him to a country other than Guatemala.

### D. The Government's Failure to Mention the Possibility of Removal to a Country Other than Guatemala

At no point during Mr. Gonzalez's removal proceedings, spanning nearly three years, did the Government mention the possibility that it would seek to remove Mr. Gonzalez to a country other than Guatemala. And at no point during Mr. Gonzalez's removal proceedings did the Immigration Court, the Board, or the Seventh Circuit consider—or become aware of a need to consider—the possibility that ICE intended to remove Mr. Gonzalez to a country other than Guatemala. Mr. Gonzalez learned of this possibility for the first time *after* he had obtained a final order granting his application for withholding of removal.

## LEGAL ARGUMENT

The basis for Mr. Gonzalez's continued detention—despite his having won his case before the Immigration Judge—is found in the Government's misinterpretation of its statute and regulation. This misreading is both problematic under the Constitution and foreclosed by the regulations currently in force.

### A. The Government Had Its Opportunity to Propose an Alternative Country for Removal and Cannot Now Remove Mr. Gonzalez to a Country Not Designated in His Removal Hearing.

The Government cannot remove Mr. Gonzalez to a country not designated during his removal proceedings. During Mr. Gonzalez's removal proceedings, there was no designation, evidence, or even mention of any country other than Guatemala. The Government's present attempt to remove Mr. Gonzalez to an alternative country violates both statutory requirements for removal and Mr. Gonzalez's constitutional rights.

### 1. Removing Mr. Gonzalez to an alternative country violates the statutory requirement that countries for removal be designated during removal proceedings.

The statutory and regulatory framework established for removal of noncitizens contemplates that the primary country for removal and any alternative country or countries for removal be designated during the removal proceedings. The Immigration and Nationality Act instructs that a noncitizen may designate the primary country for removal. 8 U.S.C. § 1231(b)(2). The regulations also provides that the Immigration Judge "*shall* . . . identify for the record a country, or countries in the alternative, to which the alien's removal may be made pursuant to § 241(b)(1) of the INA if the country of the alien's designation will not accept him or her into its territory, or fails to furnish timely notice of acceptance, or if the alien declines to designate a country." 8 C.F.R. § 1240.10(f) (emphasis added). And the regulations explicitly contemplate that removal to the primary country of removal may not always be possible. *Id.* Thus, they explicitly instruct that alternative countries be designated during the removal proceedings to account for such a possibility. Further recognizing that country designations need to be made before or during the removal proceeding, the regulations advise that "[n]o commitment of acceptance by the receiving country is required prior to designation of the receiving country . . . ." 8 C.F.R. § 241.15(d).

The Government's position—that it can seek removal to any country irrespective of designation before or during the removal proceeding—violates well-settled rules of statutory and regulatory interpretation because it renders the designation requirement in the regulations, 8 C.F.R. § 1240.10(f), superfluous and indeed meaningless, nullifying the mandatory "shall" in the Immigration Judge's obligation to identify alternative countries for removal in the event removal to the primary country is not possible.

    **2.**    **Removing Mr. Gonzalez to an alternative country without first holding a fair hearing—which already occurred only with respect to Guatemala—would violate Mr. Gonzalez's constitutional due process rights.**

The requirement that countries for removal be designated before or during the removal proceeding protects basic statutory and constitutional due process rights—requiring notice and a hearing where one can present evidence on one's behalf.  8 U.S.C. § 1229a(b)(4); U.S. Const., Amend. V; *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985); *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976).  The Seventh Circuit has ruled "that affirming a deportation order without a fair hearing concerning that deportation violates due process."  *Kuhai v. INS*, 199 F.3d 909, 913 (7th Cir. 1999).  A fair hearing provides a noncitizen "an adequate opportunity to defend themselves against that deportation."  *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998).

    To have a fair hearing, the Immigration Judge must designate, hear evidence, consider arguments, and make findings as to the country of removal.  In *Kossov*, the Government tried to remove a couple to Russia after their immigration proceedings focused on removal to Latvia.  *Id.*  The Seventh Circuit held that removal under those circumstances was unconstitutional.  *Id.*  The Seventh Circuit noted that:  (1) the asylum application had been directed to Latvia; (2) both the Immigration Judge's oral opinion and the Board's written opinion were concerned with deportation to Latvia; and (3) the Immigration Judge never informed the Kossovs that they had the right to introduce evidence directed against deportation to Russia.  *Id.*  The Seventh Circuit found that deportation would violate constitutional due process because the "record contain[ed] precious little evidence relating to Russia . . . [since] both the hearing before the IJ and the BIA's review concentrated almost exclusively on Latvia."  *Id.* ("What little evidence there [was] concerning Russia [was] certainly not substantial enough to justify upholding the order of deportation.").

6

*Kossov* establishes that it is "a fundamental failure of due process" to deny an alien "a full opportunity to present evidence concerning [his] fear of persecution in [the country of removal]." *Id.* In other words, the Government may not modify "a plaintiff's order of deportation without allowing the plaintiff to brief issues relevant to her deportation to that country." *Kuhai*, 199 F.3d at 914; see also *id*. at 913 ("Neither Kuhai nor INS have had the opportunity to brief the issue whether she may be eligible for Ukrainian citizenship or may be forced to return to Ukraine as a non-citizen.").

In this case, removal of Mr. Gonzalez would violate both the statutory requirements for removal and Mr. Gonzalez's constitutional rights. Here, the Immigration Judge designated and the Government accepted Guatemala as the only country for removal in Mr. Gonzalez's case. The Immigration Judge did not consider or hear evidence concerning Mr. Gonzalez's removal to an alternative country and whether he is likely to be persecuted or tortured there. In fact, no other country was even mentioned during Mr. Gonzalez's removal proceedings.

Put simply, Mr. Gonzalez did not have notice or a fair hearing about removal to any country other than Guatemala. Mr. Gonzalez has never resided in any country other than Guatemala and the United States, giving him no reason to anticipate, and no opportunity to challenge, the Government's present attempts to remove him to a third country. Nevertheless, the Government now seeks (or purports to seek) to remove Mr. Gonzalez to an undesignated, alternative country only because it lost its case for removal to Guatemala. But, the Government could not effect Mr. Gonzalez's removal to an undesignated alternative country without violating his statutory and constitutional rights. Thus, the notion that Mr. Gonzalez could be removed to an unnamed, unknown country provides no justification for his ongoing detention.

**B.     The Government Cannot Continue to Hold Mr. Gonzalez Because the Detention Is Not Related to a Legitimate Government Purpose.**

The Government has both a constitutional and a statutory duty not to detain a noncitizen unless the detention is related to a legitimate government purpose. During the removal period, the noncitizen "normally is held in custody" with a Government purpose of "secur[ing] the alien's removal." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). If the Government detains the alien for more than a "brief" time without a government purpose (when it cannot effectuate removal), then the detention violates both due process and the Immigration and Nationality Act. Here, the Government has no authority to detain Mr. Gonzalez because it cannot legally effectuate his removal.

**1.     Under the Constitution, the Government cannot detain Mr. Gonzalez if it cannot legally effectuate his removal.**

The Supreme Court has made clear that noncitizens have a liberty interest in being free from detention. *Zadvydas*, 533 U.S. at 689-690; *Hussain v. Mukasey*, 510 F.3d 739, 743 (7th Cir. 2007). Government detention violates due process unless it is reasonably related to a legitimate government purpose.

Even though a noncitizen possesses a Fifth Amendment liberty interest, the immigration detention statutes, on their face, do not require a government purpose in order to detain, and this presents a problem under the Constitution. *Zadvydas*, 533 U.S. at 690, *overruling in part Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999). "[I]t is a cardinal principle of statutory interpretation . . . that when an Act of Congress raises a serious doubt as to its constitutionality, this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Zadvydas*, 533 U.S. at 689 (internal citation and quotation omitted). Accordingly, the Supreme Court imposed an implicit limitation on the post-removal immigration detention statute, 8 U.S.C. § 1231(a), that detention may only be for "a period reasonably necessary to bring about

8

that alien's removal from the United States." *Id*. Although the "basic purpose [of] effectuating an alien's removal" is a legitimate government purpose, *id*. at 697, detention for this purpose may only be for a "very limited time." *Demore v. Kim*, 538 U.S. 510, 529 n.12 (2003); *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005). As the Supreme Court concluded, if a statute allows for detention when there is *no* possibility of removal, then there are substantive due process concerns because (a) the need to detain to ensure the noncitizen will attend future removal proceedings is "weak or nonexistent," and (b) the need to protect the community is insufficient without a finding that the noncitizen is dangerous. *Zadvydas*, 533 U.S. at 690-92. In other words, detention is only lawful when "necessary to bring about that alien's removal." *Id*. at 689.

Because the Government cannot remove Mr. Gonzalez to a country that was not designated in his removal proceedings without violating his statutory and constitutional due process rights, the Government cannot plausibly argue that his detention is even related to his removal, much less "necessary to bring [it] about." *Id.* Moreover, there is no alternative country to which Mr. Gonzalez can be removed under the provisions of 8 U.S.C. § 1231(b)(2)(E)—other than the catchall provision of last resort, which, as a practical matter, will never be applied here—as he has no connections to any countries other than Guatemala and the United States. The minimal chances of Mr. Gonzalez's removal to an alternative country, under these circumstances, do not rise to the level of a legitimate government purpose to continue his detention. Mr. Gonzalez should therefore be released.

Moreover, the Due Process Clause protects against even short detentions. In *Argersinger*, the Supreme Court noted that there must be protections "in a case that actually leads to imprisonment even for a brief period." *Argersinger v. Hamlin*, 407 U.S. 25, 33 (1972). Courts in the Seventh Circuit have grappled with the boundaries of "brief time," concluding that while a 51-

9

hour detention is short enough to not raise due process concerns, 18 days is clearly excessive, and no matter how "permissibly 'brief' . . . might be defined, it would be less than 57 days." *Hunt v. Elkhart County Sheriff*, 95 F. Supp. 2d 930, 937 (N.D. Ind. 2000); *Johnson v. Herman*, 132 F. Supp. 2d 1130, 1139 (N.D. Ind. 2001) ("The Due Process Clause clearly protects against eighteen days of unlawful incarceration."). As of the filing date of this petition, Mr. Gonzalez has been improperly detained since a final order was entered in his case on December 13, 2017. By the time the Government files a response to this petition, the length of Mr. Gonzalez's detention will likely have far exceeded 18 days, and Mr. Gonzalez's overall time in immigration custody will be in excess of 30 months. For every day since the Immigration Judge's decision and the Government's waiver of appeal, Mr. Gonzalez's detention has been and will be unlawful, as it is unrelated to any legitimate government purpose.

### 2. Under 8 U.S.C. § 1231(a), the Government cannot detain Mr. Gonzalez if it cannot legally effect his removal.

In addition to due process concerns, the Government has statutory authority to detain during the 90-day removal period only if it can effect removal. "[W]hen an alien is ordered removed from the United States, the Attorney General is obligated to facilitate that individual's actual removal within 90 days, a period called the 'removal period.'" *Xi v. INS*, 298 F.3d 832, 834, 840 n.6 (9th Cir. 2002) ("This holding does not, however, absolve the INS of the statutory duty to effect the physical removal of individuals ordered removed within the statutory specified 90-day 'removal period.'"). Likewise, "DHS has a statutory duty to effect removal within the 90-day period, if possible." *Ulysse v. DHS*, 291 F.Supp.2d 1318, 1324 (M.D. Fla. 2003). In other words, "the statutes at issue permit detention only while removal remains reasonably foreseeable." *Nadarajah v. Gonzales*, 443 F.3d 1069, 1078 (9th Cir. 2006).

The authorizing statute, 8 U.S.C. § 1231(a)(1), defines removal period as a period of time when "the Attorney General shall remove the alien." 8 U.S.C. § 1231(a)(1)(A). Therefore, detention under § 1231(a) is only allowed in order for the Government to effectuate a noncitizen's removal. In Mr. Gonzalez's case, the Government cannot effectuate his removal to Guatemala, the designated country for removal, as the Immigration Judge granted Mr. Gonzalez withholding of removal to Guatemala. Nor can the Government remove him to an undesignated alternative country without violating the regulatory scheme for removal proceedings as well as Mr. Gonzalez's constitutional due process rights. Accordingly, the Government cannot legally effectuate Mr. Gonzalez's removal and therefore has no authority to continue to detain him under 8 U.S.C. § 1231(a).

Although some courts have suggested that the language of 8 U.S.C. § 1231(a)(2) mandates detention for the full 90 days during the "removal period," those suggestions are incorrect. First, *Zadvydas* itself says that "the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien *normally is held in custody*." *Zadvydas*, 533 U.S. at 682 (emphasis added). This language indicates custom, not mandate. Second, in *Zadvydas*, the Court spoke of the "removal period" as the time when "reasonably foreseeable removals could be accomplished." *Id*. at 680. Thus, under *Zadvydas*, unless removal is reasonably foreseeable—and it is not here—the Government cannot detain a noncitizen even for a short amount of time. Although the Seventh Circuit has not had the opportunity to address the question, other Circuits are clear that *Zadvydas* "spoke broadly" as to the applicability of its "ultimate holding" that there is a reasonable time limitation on the detention of deportable noncitizens. *Xi*, 298 F.3d at 835 (quoting *Zadvydas*, 533 U.S. at 682) (concluding that "[i]n assessing the applicability of the statute, the Court spoke broadly . . . .").

Perhaps most telling on this point is the Government's own memorandum. The U.S. Department of Justice, in a memorandum promulgated when it retained control over immigration enforcement, found that detention during the 90-day removal period is non-mandatory:

> The purpose of the removal period, however, is to facilitate the execution of the removal order. If, therefore, an alien has been finally granted withholding or deferral of removal and INS is not actively pursuing the alien's removal to an alternate country, *the INS has authority to consider the release of such alien during the removal period.*

Memorandum for Regional Counsel from Bo Cooper, General Counsel, U.S. Dept. of Justice (Apr. 21, 2000) (emphasis added), *available at Detention and Release During the Removal Period of Aliens Granted Withholding of Deferral or Removal* (Apr. 21, 2000), 8 Immigration Law Service 2d PSD Selected DHS Document 1830.[1] Thus, there is no merit to an argument that detention during the removal period is mandatory.

## CONCLUSION

For the reasons stated above, the Government's continued detention of Mr. Gonzalez violates Mr. Gonzalez's due process rights, and the Government lacks legal authority to continue to detain him. Mr. Gonzalez therefore respectfully requests that this Court grant his petition for a writ of habeas corpus.

---

[1] Mr. Gonzalez does not argue that continued detention pending potential removal to a third country is always impermissible; for instance, in a case where the Immigration Judge designated a third country for removal or where a noncitizen was a dual national or had previously resided in a third country for an extended period, the Government would be well within its rights to attempt to effectuate such removal. *See, e.g.*, *Matter of Salim*, 18 I&N Dec. 311, 317 (BIA 1982) (ordering applicant deported to Pakistan, granted withholding of removal to Afghanistan); *Matter of Janus and Janek*, 12 I&N Dec. 866, 877-78 (BIA 1968) (ordering deportation to Sweden or Czechoslovakia, granting withholding to Czechoslovakia). This is not the case here, however.

December 20, 2017                              Respectfully submitted,

                                              */s/ Kimball R. Anderson*
                                              Kimball R. Anderson
                                              Thomas J. Frederick
                                              DaWanna L. McCray
                                              WINSTON & STRAWN LLP
                                              35 West Wacker Drive
                                              Chicago, IL 60601
                                              Tel: (312) 558-5600
                                              kanderson@winston.com
                                              tfrederick@winston.com
                                              dmccray@winston.com

                                              Mulan Cui
                                              WINSTON & STRAWN LLP
                                              200 Park Avenue
                                              New York, NY 10166
                                              Tel: (212) 294-6700
                                              mcui@winston.com

                                              */s/ Mark Fleming*
                                              Mark Fleming
                                              Keren Zwick
                                              NATIONAL IMMIGRANT
                                              JUSTICE CENTER
                                              208 South LaSalle Street, Suite 1300
                                              Chicago, IL 60604
                                              Tel: (312) 660-1370
                                              mfleming@heartlandalliance.org
                                              kzwick@heartlandalliance.org

                                              *Counsel for Petitioner Bayron A. Gonzalez*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Petition for a Writ of Habeas Corpus contains 3,618 words and therefore complies with the type-volume limit of Rule 7.1(B)(4) of the Local Rules of the U.S. District Court for the Central District of Illinois.

*/s/ Kimball R. Anderson*
Kimball R. Anderson
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
kanderson@winston.com

*Counsel for Petitioner Bayron A. Gonzalez*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2017, I caused the foregoing Petition for a Writ of Habeas Corpus to be electronically filed with the Clerk of the Court using the CM/ECF system.

*/s/ Kimball R. Anderson*
Kimball R. Anderson
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
kanderson@winston.com

*Counsel for Petitioner Bayron A. Gonzalez*